Electronically Filed
Intermediate Court of Appeals
CAAP-11-0000763
30-DEC-2014
08:29 AM

NO. CAAP-11-0000763

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

NELSON A. CHUNG, Claimant-Appellant,
v.
CITY AND COUNTY OF HONOLULU
DEPARTMENT OF PARKS AND RECREATION,
Employer-Appellee

APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS APPEALS BOARD
(CASE NO. AB 2008-558 (2-08-04079))

MEMORANDUM OPINION
(By: Nakamura, Chief Judge, and Reifurth and Ginoza, JJ.)

In this workers' compensation case, the Labor and
Industrial Relations Appeals Board (LIRAB) denied the claim for
psychological stress injury made by Claimant-Appellant Nelson A.
Chung. Chung was employed as a recreation director by Employer-
Appellee City and County of Honolulu, Department of Parks and
Recreation (City). Chung's claim stemmed from a remark made by
his supervisor that Chung would be assigned to the teen program
and the gym at Manoa Valley District Park if he was still there
during the summer. Chung's supervisor was referring to the
City's practice of transferring staff to different parks to run
summer fun programs at the last minute. This practice, which had
been applied to Chung the prior summer, was being discussed
immediately before the supervisor's remark. Chung misperceived
the supervisor's comment as a derogatory remark about his
potential termination. The LIRAB found that Chung's claimed

"psychological condition" was the result of his "misperception of various events and communications" and "was not caused or aggravated by work but was entirely imported by [Chung] into the workplace." It therefore concluded that Chung had not sustained a personal psychological injury arising out of his employment.

Chung appeals from the LIRAB's Decision and Order. On appeal, Chung contends that: (1) the LIRAB erred in making, and failing to make, numerous findings that led to its denial of his claim; (2) the LIRAB's denial of his claim was contrary to law; and (3) the LIRAB erred in admitting hearsay evidence at the hearing on his claim. We affirm.

BACKGROUND

I.

A.

In December 2006, Chung began his employment with the City as a Recreation Director I at the Manoa Valley District Park. At the end of Chung's six-month probationary period, Chung's supervisor, Pamela Okihara, gave him a satisfactory rating, and Chung became a permanent employee. In October 2007, the Recreational Director II at the Manoa Valley District Park was transferred to become a Recreational Director III at another park. In November 2007, Okihara conducted an annual performance review of Chung and found that his work performance was substandard. Chung was placed on a special three-month performance evaluation.

On February 15, 2008, a staff meeting was held in which Chung, Okihara, and others were present. One of the matters discussed was staff assignments at the Manoa Park for the City's summer fun program. Chung had been sent to Paki Community Park the previous summer to run its summer fun program. During the discussion about the summer fun staff assignments, Elizabeth Sunuda commented that the staff never knew who would be at the Manoa Park until the last minute because they could be transferred to another park. It was in this context that Okihara told Chung that his summer fun assignment at the Manoa Park would

2

be the teen program and the gym if he was still at the park -- in other words, if he was not transferred to another park.

On March 2, 2008, Chung was involved in a motor vehicle accident, in which he was going too fast around a curve and crashed into a palm tree.

B.

On April 1, 2008, Chung filed a workers' compensation claim, which identified February 15, 2008, as the "Date of Accident" and which alleged that "[d]uring a mandatory complex meeting, Supervisor directed a[n] unnecessary derogatory remark about my potential termination, in front of co-workers. I was humiliated and shocked by the statement as I had no prior warning." Chung described his injury/illness as "[a]nxious, lack of ability to concentrate, depression."

The City denied liability for Chung's claim pending investigation. In an April 30, 2008, statement, Okihara explained the comment she made at the February 15, 2008, meeting, which formed the basis for Chung's workers' compensation claim, as follows:

> The comment was in reference to Mr. Chung being detailed to another park for the summer and not about his possible termination. The discussion that preceded this remark was about summer staffing at Manoa. The senior director at Manoa made the comment that we never know what's going to happen until the last minute. I then in[fo]rmed Mr. Chung that he would be assigned the Teens and the gym during the summer and would need to work all nights. I then joked, "That is if you are still here in June." Then I said I'm only joking because in all probab[i]lity he would be assigned to Manoa and would not be detailed as he was last summer.

C.

Chung sought treatment from psychiatrist Dennis B. Lind, M.D., whom Chung had seen on prior occasions from as early as 1990. Dr. Lind diagnosed Chung as having an Adjustment Disorder with Anxiety and Depressed Mood.

At the City's request, clinical psychologist Joseph P. Rogers, Ph.D., performed an independent psychological examination (IPE) of Chung. As part of his IPE, Dr. Rogers reviewed medical

3

records from Dr. Lind. These records revealed that Chung had encountered problems with previous employers and that Chung had a "thin skin" and "a low threshold for anxiety."

Based on his IPE, Dr. Rogers opined that Chung "did not sustain a 'mental injury' that arose out of and in the course of his employment with the City and County of Honolulu." Dr. Rogers cited several reasons for his conclusion. Dr. Rogers referred to Okihara's April 30, 2008, statement explaining her comment at the February 15, 2008, meeting as well as the written statements of two staff members present at the meeting who confirmed that they did not observe any derogatory remarks made toward Chung at the meeting. Dr. Rogers opined that Chung's workers' compensation claim was based on Chung's clear "misperception or misinterpretation" of his supervisor's comments at the February 15, 2008, meeting.

Significantly, Dr. Rogers opined that:

> there is evidence of underlying Dependent/Obsessive-Compulsive/Histrionic Personality Traits. These same personality traits clearly emerged on current psychometric testing. Essentially, Mr. Chung tends to be hypersensitive to any criticism and tends to overreact with a combination of perseveration/dwelling on his circumstances and excessive emotionality. Thus, the true cause of his stress in the workplace with his current supervisor at the City and County of Honolulu is due to his Dependent/Obsessive-Compulsive/Histrionic Personality Traits. . . . The fact that he remains off work indicates that there are much more profound psychodynamics involved. In my opinion, these psychodynamics involve his hypersensitivity to criticism caused by his underlying Dependent/Obsessive-Compulsive/Histrionic Personality Traits. His personality traits are clearly pre-existing in nature and causally unrelated to his employment at the City and County of Honolulu.

(Emphases added.)

Dr. Rogers also noted that Chung's March 2, 2008, motor vehicle accident, which was not work related, was a significant personal source of stress in his life. Dr. Rogers opined that the motor vehicle accident "has resulted in clinically significant anxiety symptoms that may reach diagnostic criteria for Post-Traumatic Stress Disorder[.]" Dr. Rogers further opined that the fact that the City had placed Chung on a performance

4

evaluation, which Dr. Rogers characterized as disciplinary action, was a cause of stress to Chung.

Dr. Rogers reported that "[Chung] would meet the diagnostic criteria for a Depressive Disorder, Not Otherwise Specified." In response to specific questions posed by the City, Dr. Rogers stated (1) that Chung did not suffer a work-related stress/mental injury as a result of the February 15, 2008, meeting and (2) that Chung suffers from a pre-existing and underlying medical/psychological condition, namely, Dependent/Obsessive-Compulsive/Histrionic Personality Traits, that has impacted his current mental condition.

In response to a September 16, 2008, letter, Dr. Lind acknowledged that he had reviewed Dr. Rogers' IPE report; that he essentially agreed with Dr. Rogers' findings; and that he had no points of disagreement with the medical conclusions rendered by Dr. Rogers. After Chung learned that Dr. Lind had agreed with Dr. Rogers' report, Chung stopped treatment with Dr. Lind and began receiving treatment from clinical psychologist, Chalsa M. Loo, Ph.D. Unlike Dr. Rogers, Dr. Loo believed that Chung's psychological distress and his condition -- which she diagnosed as anxiety disorder not otherwise specified and adjustment disorder with depressed mood, chronic -- was work-related.

D.

On November 14, 2008, the Director of the Department of Labor and Industrial Relations denied Chung's claim for compensation. In rendering this decision, the Director credited the opinions of Drs. Rogers and Lind. The Director adopted the opinion of Dr. Rogers, as agreed to by Dr. Lind, and concluded that Chung "did not sustain a work-related stress injury on 2/15/2008."

E.

Chung appealed the Director's decision to the LIRAB. The LIRAB filed a Pretrial Order which set forth the issue to be determined in Chung's appeal to the LIRAB. The Pretrial Order provided that "[t]he sole issue to be determined is whether

5

[Chung] sustained a personal psychological injury on February 15, 2008, arising out of and in the course of employment."

The LIRAB held a hearing on Chung's appeal, at which Chung, Dr. Loo, and Okihara testified. The LIRAB also admitted over Chung's hearsay objection: (1) Okihara's testimony that she spoke to Elizabeth Sunuda and that Sunuda had reservations about whether they should find Chung's job performance had been satisfactory during his initial six-month probationary period after being hired; and (2) two exhibits consisting of Dr. Lind's acknowledgment of his agreement with Dr. Rogers' IPE report findings and Dr. Lind's handwritten treatment notes.

The LIRAB entered its Decision and Order on September 28, 2011. The LIRAB credited Dr. Rogers' diagnosis of Chung as having a Depressive Disorder, not otherwise specified. The LIRAB did not, however, adopt Dr. Rogers' opinion that this diagnosis could be related to disciplinary action because Chung was not subject to "disciplinary action" as defined by the workers' compensation statute. Based on Okihara's testimony and other evidence, the LIRAB made the following finding as to the February 15, 2008, meeting:

> The meeting on February 15, 2008 included a discussion of the upcoming summer fun program and a comment as to [Chung's] anticipated job duties if he was still at Manoa Park, which followed a discussion of [Chung's] temporary transfer to a different park the previous summer. There was no insinuation that he would be terminated.

With respect to the cause of Chung's psychological condition, the LIRAB found:

> The [LIRAB] finds that [Chung's] psychological condition, whether it is an anxiety disorder, adjustment disorder, or depressive disorder was the result of [Chung's] misperception of various events and communications. His condition was not caused or aggravated by work but was entirely imported by [Chung] into the workplace.

The LIRAB ultimately concluded that "[Chung] did not sustain a personal psychological injury on February 15, 2008, arising out of and in the course of employment." Accordingly,

6

the LIRAB affirmed the decision of the Director to deny Chung's workers' compensation claim.

DISCUSSION

I.

Chung contends that the LIRAB erred in making, and in failing to make, numerous findings which ultimately led to its decision to deny his claim. The essence of Chung's argument is that the LIRAB erred in accepting the testimony and opinions of Okihara, Dr. Rogers, and Dr. Lind over that of Chung and Dr. Loo. Based on this premise, Chung contends that the LIRAB erred in (1) making various findings and (2) not making other findings that were supported by evidence he presented.

We review LIRAB's findings of fact under the clearly erroneous standard. Moi v. State, Dept. of Public Safety, 118 Hawai'i 239, 242, 188 P.3d 753, 756 (App. 2008). In reviewing LIRAB decisions, we also give deference to the LIRAB's assessment of the credibility of witnesses and the weight it gives to the evidence. Id. Here, the LIRAB chose to credit and give weight to the testimony and opinions of Okihara, Dr. Rogers, and Dr. Lind, and it chose not to accept the contrary testimony and opinions of Chung and Dr. Loo. We decline to overturn the LIRAB's assessment of the evidence. Based on the LIRAB's credibility and weight determinations, we conclude that there was substantial evidence to support the LIRAB's material findings and that those findings were not clearly erroneous. We also conclude that the LIRAB did not err in failing to make findings based on the evidence presented by Chung.[1]

_____

[1] We note that Chung's appeal to the LIRAB was limited to "whether [Chung] sustained a personal psychological injury on February 15, 2008, arising out of and in the course of employment." However, Chung's arguments that the LIRAB erred in failing to make findings include matters that were unrelated to the February 15, 2008, meeting and beyond the scope of the issue presented for appeal to the LIRAB. This provides an additional reason for rejecting these arguments.

7

II.

We reject Chung's contention that the LIRAB's denial of his claim was contrary to law. The LIRAB found that Chung's "psychological condition . . . was the result of [Chung's] misperception of various events and communications" and that "[h]is condition was not caused or aggravated by work but was entirely imported by [Chung] into the workplace."[2] In other words, the LIRAB found that Chung's claim for psychological stress injury was not work-related because it was not based on anything that actually happened at work, but only on Chung's misperception of what had happened. Chung's misperception, in turn, was based on his pre-existing psychological personality traits.

For an injury to be compensable under Hawaii's workers' compensation law, "there must be a requisite nexus between the employment and the injury." Tate v. GTE Hawaiian Telephone Co., 77 Hawai'i 100, 103, 881 P.2d 1246, 1249 (1994). We conclude that the LIRAB did not err in determining that the requisite nexus or causal connection between Chung's employment and his claimed injury was not present in this case. See id.; McGarrah v. State Acc. Ins. Fund Corp., 675 P.2d 159, 170 (Or. 1983) ("[O]n-the-job stress conditions causing the disorders must be real. That is, the events and conditions producing the stress must, from an objective standpoint, exist in reality. . . . A worker's misperception of reality does not flow from any factual work condition."); Papa v. Workmen's Compensation Appeal Board (Franklin Mint Corp.), 549 A.2d 1352, 1354-55 (Pa. Commw. Ct. 1988) (upholding denial of claim for psychic injury that was based on claimant's misperception of harassment by co-workers and

---

[2] The LIRAB's finding was supported by Dr. Rogers' opinion that the "true cause" of Chung's stress was his Dependent/Obsessive-Compulsive/Histrionic Personality Traits, which "are clearly pre-existing in nature and causally unrelated to his employment at the City and County of Honolulu."

improper training, which were imagined and did not exist in her work environment).

III.

Chung's contention that we must overturn the LIRAB's decision based on its admission of hearsay evidence is without merit.

Chung challenges on hearsay grounds the LIRAB's admission of the City's Exhibits 3 and 7 and a portion of Okihara's testimony. The LIRAB admitted this evidence over Chung's hearsay objection. Exhibit 3 is a letter sent to and signed by Dr. Lind, which confirms that (1) Dr. Lind had "reviewed Dr. Rogers' [IPE] report and essentially agree[d] with [Dr. Rogers'] findings"; and (2) Dr. Lind had "no points of disagreement with the medical conclusions rendered by Dr. Rogers relative to Mr. Chung's case." Exhibit 7 is Dr. Lind's progress notes relating to Chung, and it includes notes dated from September 10, 1990, to September 11, 2008. Chung objected to Okihara's testimony that at the end of Chung's six-month probationary period after he was hired, Okihara spoke to Sunuda who had some reservations about whether they should find that Chung had satisfactorily completed his probation. Okihara further testified that despite Sunuda's reservations, Okihara gave Chung a satisfactory rating.

The LIRAB is not precluded from admitting and considering hearsay evidence. See Price v. Zoning Bd. of Appeals of City and Cnty. of Honolulu, 77 Hawai'i 168, 176, 883 P.2d 629, 637 (1994) ("[T]he rules of evidence in administrative hearings, unlike those applicable to judicial proceedings, allow admission of hearsay evidence."). Hawaii Revised Statutes (HRS) § 91-10 (2012) sets forth evidentiary standards for contested cases, such as Chung's appeal to the LIRAB. HRS § 91-10(1) provides in pertinent part: "[A]ny oral or documentary evidence may be received, but every agency shall as a matter of policy provide for the exclusion of irrelevant, immaterial, or unduly repetitious evidence . . . . The agencies shall give effect to

the rules of privilege recognized by law[.]" The relevant LIRAB rule, Hawai'i Administrative Rules § 12-47-41, provides:

> The [LIRAB] shall not be bound by statutory and common law rules relating to the admission or rejection of evidence. The [LIRAB] may exercise its own discretion in these matters, limited only by consideration of relevancy, materiality, and repetition, by the rules of privilege recognized by law, and with a view to securing a just, speedy, and inexpensive determination of the proceedings.

The evidence challenged by Chung was not irrelevant, immaterial, repetitious, or barred by rules of privilege, and the LIRAB did not abuse its discretion in allowing its admission. Exhibits 3 and 7 were relevant to the extent and cause of Chung's claimed injury. Okihara's testimony was relevant to providing background regarding her relationship with Chung.

CONCLUSION

For the foregoing reasons, we affirm the LIRAB's Decision and Order.

DATED: Honolulu, Hawai'i, December 30, 2014.

On the briefs:

R. Steven Geshell
for Claimant-Appellant

Robert Carson Godbey
for Employer-Appellee

Craig H. Nakamura
Chief Judge

Associate Judge

Associate Judge

10